KILPATRICK TOWNSEND & STOCKTON LLP
LARRY W. McFARLAND, ESQ. (Bar No. 129668)
LMcFarland@kilpatricktownsend.com
DENNIS L. WILSON, ESQ. (Bar No. 155407)
DWilson@kilpatricktownsend.com
EMIL W. HERICH, ESQ. (Bar No. 116783)
EHerich@kilpatricktownsend.com
9720 Wilshire Boulevard, PH Suite
Beverly Hills, CA  90212-2018
Telephone:   310-248-3830
Facsimile:    310-860-0363

PETER M. BOYLE (admitted *pro hac vice*)
PBoyle@kilpatricktownsend.com
607 14th Street, NW, Suite 900
Washington, D.C. 20005-2018
Telephone:   202-508-5831
Facsimile:    202-585-0057

Attorneys for Defendant
INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PIXELS.COM, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INSTAGRAM, LLC, A DELAWARE LIMITED LIABILITY COMPANY,<br><br>　　　　Defendant. | Civil Action No. 3:15-cv-03610-VC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED**<br><br>DATE:　　December 17, 2015<br>TIME:　　10:00 a.m.<br>PLACE:　Courtroom 4, Courtroom of the Honorable Vince Chhabria, District Judge<br><br>Complaint Filed:　August 6, 2015<br>Trial Date:　　[Not Set] |

## TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on December 17, 2015 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom No. 4, the Courtroom of the Honorable Vince Chhabria located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden

1   Gate Avenue, 17th Floor, San Francisco, California 94102, Defendant Instagram, LLC

2   ("Defendant") will and hereby does move the Court to dismiss the sixth, seventh, eighth and ninth

3   claims for relief averred in Plaintiff Pixels.com, LLC's ("Plaintiff") First Amended Complaint for

4   Declaration of Non-Infringement and Non-Dilution of Trademark Rights and for Antitrust

5   Violations ("FAC") on the grounds that those counts fail to state a claim on which relief can be

6   granted.

7       Specifically, the relief sought by movant is that Plaintiff's Count VIII (for violation of

8   antitrust laws) be dismissed because: 1) the FAC identifies an implausibly overbroad relevant

9   market where the products that supposedly compete in such market are not interchangeable with or

10  substitutes for one another; 2) the alleged relevant market is so broad that Plaintiff cannot allege any

11  plausible basis for inferring that Defendant possesses the requisite market share necessary to state a

12  viable antitrust claim under Section 2 of the Sherman Act; 3) the FAC impermissibly contradicts

13  allegations made in the original complaint that Plaintiff "fall[s] outside Defendant's relevant

14  market" which demonstrated that Plaintiff lacked the requisite standing and/or antitrust injury

15  necessary to state an antitrust claim; 4) the antitrust claim is precluded by the *Noerr-Pennington*

16  doctrine and the "sham" exception thereto does not apply; and 5) the "trademark misuse" alleged by

17  Defendant does not support an antitrust claim.  Movant seeks dismissal of Plaintiff's Count IX for

18  violation of California Business & Professions Code section 17200 because it is wholly derivative

19  of its antitrust claim and must be dismissed along with that claim.  Movant seeks dismissal of

20  Plaintiff's Counts VI for declaratory judgment on equitable grounds based on trademark misuse and

21  Count VII for declaratory relief based on the equitable grounds of acquiescence, laches and estoppel

22  because they are based on theories and affirmative defenses that do not constitute a viable cause of

23  action, they are redundant of Plaintiff's other claims, they improperly seek to deprive Defendant of

24  the right to petition for redress of grievances and they are an improper basis to oppose Defendant's

25  objections to the registration of Plaintiff's "INSTAPRINTS" mark.

26

27

28

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, Defendant's Request for Judicial Notice and the pleadings and papers filed herein.


DATED:  November 9, 2015          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By: /s/ Dennis L. Wilson
      DENNIS L. WILSON

Attorneys for Defendant
INSTAGRAM, LLC

1

**TABLE OF CONTENTS**

2

Page

3

I.     INTRODUCTION .................................................................................................1

4

II.    LEGAL STANDARD .........................................................................................3

5

III.   ARGUMENT .......................................................................................................3

6

A.    Plaintiff's Antitrust Claim Fails to State a Claim for which
             Relief May Be Granted. ...........................................................................3

7

8

1.    Because the FAC Alleges a Legally Deficient and
                    Facially Implausible Relevant Market, the Antitrust
                    Claim Fails as a Matter of Law. ..................................................3

9

10

2.    Plaintiff Cannot Maintain Its Antitrust Claim Because
                    It Failed to Satisfy the Market Power Pleading
                    Requirements...............................................................................7

11

12

3.    Plaintiff Cannot Cure Its Prior Legally Deficient
                    Allegations by Amending to Incorporate Contradictory
                    Allegations. .................................................................................7

13

14

4.    Plaintiff's Antitrust Claim Seeks to Challenge Conduct
                    Immunized under the *Noerr-Pennington* Doctrine and,
                    thus, Fails to State a Claim..........................................................9

15

16

5.    Plaintiff's Trademark Misuse Allegations Fail to State
                    a Valid Antitrust Claim. ............................................................10

17

6.    The Court Should Dismiss the Antitrust and Related
                    Claims With Prejudice. .............................................................11

18

19

B.    Plaintiff's UCL Claims Must Fall along with Its Antitrust
             Claim...................................................................................................12

20

C.    Plaintiff's Sixth Count for Declaratory Judgment Relief on
             Equitable Grounds-Trademark Misuse Fails to State a Claim...........12

21

22

D.    Plaintiff's Seventh Claim For Relief Based On Equitable
             Ground-Acquiescence, Laches, Estoppel- Should Be
             Dismissed ...........................................................................................13

23

IV.    CONCLUSION...................................................................................................15

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Adidas-America Inc. v. Payless Shoesource, Inc.*,
5
    546 F. Supp.2d 1029 (D. Oreg. 2008) ........................................................................ 9

6
*Aguilar v. Atlantic Richfield Co.*,
    25 Cal.4th 826, 107 Cal.Rptr.2d 481 (2001) ......................................................... 12

7
*Ashcroft v. Iqbal*,
8
    556 U.S. 662 (2009) ................................................................................................. 3

9
*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) .................................................................................... 3
10

11
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 3

12
*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
13
    182 F.3d 1096 ........................................................................................................... 4

14
*Blue Cross and Blue Shield Ass'n v. Group Hospitalization and Medical Services,*
    *Inc.*, 744 F. Supp. 700 (E.D. Va. 1990) ................................................................... 11
15

16
*Bradley v. Chiron Corp.*,
    136 F. 3d 1317 (Fed. Cir. 1998) .............................................................................. 8

17
*California Packing Corp. v. Sun Maid Raisin Growers*,
18
    165 F. Supp. 245 (S.D. Cal. 1958), *aff'd* 273 F.3d 282 (9th Cir. 1959) ................. 11

19
*Callaway Vineyard & Winery v. Endsley Cap. Grp.*,
    63 U.S.P.Q.2d 1919 (TTAB 2002) ........................................................................ 15
20

21
*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) .................................................................................. 6

22
*Chavez v. Whirlpool Corp.*,
23
    97 Cal.App.4th 363, 113 Cal.Rptr.2d 175 (2001) .................................................. 12

24
*Clorox Co. v. Sterling Winthrop, Inc.*,
    117 F.3d 50 (2d Cir. 1997) ..................................................................................... 10
25

26
*Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.*,
    934 F.2d 1551 (11th Cir. 1991) .............................................................................. 14

27
*Colonial Medical Group, Inc. v. Catholic Healthcare West*,
28
    2010 WL 2108123 (N.D. Cal. May 25, 2010) ......................................................... 4

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*County. of Stanislaus v Pac. G. & E. Co.*,
    1994 WL 16798446 (E.D. Cal. Aug, 25, 1994) ............................................................. 6

4

5

*DTND Sierra Investments LLC v. Bank of New York Mellon Trust Co., N.A.*,
    958 F.Supp.2d 738 (W.D. Tex. 2013)................................................................ 12, 13

6

*Empress LLC v. City & County of S.F.*,
    419 F.3d 1052 (9th Cir. 2005)................................................................................. 13

7

8

*Falstaff Brewing Co. v. Stroh Brewery Co.*,
    628 F. Supp. 822 (N.D. Cal. 1986) ........................................................................... 7

9

10

*Fevinger v. Bank of America*,
    Case No. 5:13-cv-04839-PSG (N.D. Cal., Aug. 4, 2014) .......................................... 8

11

*Futurevision Cable Systems of Wiggins, Inc. v. Multivision Cable TV Corp.*,
    789 F. Supp. 760 (S.D. Miss. 1992)........................................................................... 7

12

13

*Golden Gate Pharmacy Serv. Inc. v. Pfizer, Inc.*,
    2010 WL 1541257 (N.D. Cal. Apr. 16, 2010) ........................................................... 6

14

*Johnson v. Lucent Technologies Inc.*,
    653 F.3d 1000 (9th Cir. 2011)................................................................................. 11

15

16

*Juno Online Services, L.P. v. Juno Lighting, Inc.*,
    979 F.Supp. 684 (N.D. Ill. 1997) ............................................................................ 12

17

18

*Killian Pest Control v. HomeTeam Pest Defense, Inc.*,
    2015 WL 3766754 (N.D. Cal. June 16, 2015) (Chhabria, J.) .................................. 3, 4

19

20

*Loblaw Companies, Ltd. v. Azimi*,
    2001 WL 31028016 (N.D. Cal., October 17, 2001).................................................. 12

21

*Mir v. Frosburg*,
    646 F.2d 342 (9th Cir. 1980)................................................................................... 11

22

23

*Newcal Indus., Inc. v. IKON Office Solution, Inc.*,
    513 F.3d 1038 (9th Cir. 2008).................................................................................... 3

24

25

*Prakash v. Altadis U.S.A., Inc.*,
    2012 WL 1109918 (N.D. Ohio Mar. 30, 2012) ......................................................... 9

26

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)............................................................................................... 9, 10

27

28

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990)..................................................................................... 8

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*RJ Machine Co. Inc. v. Canada Pipeline Accessories Co. Ltd.*,
  2013 WL 8115445 (W.D. Tex. Nov. 22, 2013) .......................................................... 11

4

5

*Rock v. NCAA*,
  928 F. Supp. 2d 1010 (S.D. Ind. 2013) ...................................................................... 6

6

*Salem Commodities, Inc. v. Miami Margarine Co.*,
  244 F.2d 729 (C.C.P.A. 1957) .................................................................................. 14

7

8

*The Seven-Up Co.*,
  183 U.S.P.Q. at 166, 1974 WL 886 at *1 ............................................................. 10, 11

9

10

*Sidibe v. Sutter Health*,
  4 F. Supp.3d 1160, 1174 (N.D. Cal. 2013) ....................................................... 3, 4, 6, 7

11

*Sidibe v. Sutter Health*,
  51 F. Supp.3d 870, 882-83 (N.D. Cal. 2014) .............................................................. 4

12

13

*Smith v. Silvey*,
  149 Cal.App.3d 400, 197 Cal.Rptr. 15 (1983) ........................................................... 13

14

*Sprewell v. Golden State Warriors*,
  266 F. 3d 979 (9th Cir. 2001) ..................................................................................... 8

15

16

*Synopsys, Inc. v. ATopTech, Inc.*,
  2015 WL 4719048 (N.D. Cal. 2015) ............................................................................ 7

17

*Tanaka v. University of So. Cal.*
  252 F.3d 1059 (9th Cir. 2001) ................................................................................. 3, 4

18

19

*USS-POSCO Indus. v. BE&K Construction, Co.*,
  31 F.3d 800 (9th Cir. 1994) .................................................................................. 9, 10

20

21

**Statutes**

22

California Business and Professions Code § 17200 ........................................................ 2

23

**Rules**

24

Fed.R.Civ.Proc. 12(f) .................................................................................................. 13

25

Rule 12(b)(6) ............................................................................................................ 3, 4

26

27

28

- iv -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

      This is a trademark dispute involving Defendant's senior, registered rights in the trademarks "INSTAGRAM" and "INSTA + design" for a social networking and photo sharing service and platform, and Plaintiff's use of the mark INSTAPRINTS for a service that uses the Instagram Application Programming Interface ("API") to take materials directly from the Instagram service, and then fulfills orders to print those materials.  Plaintiff's use of the INSTAPRINTS mark willfully infringes and dilutes the famous INSTAGRAM trademark in violation of the Lanham Act, and also violates the terms of service for the Instagram platform.

      As the owner of one of the most famous brands on the internet, Defendant has a responsibility to prevent abuse of its trademarks.  It takes this responsibility seriously, carefully evaluating each potential dispute before taking action.  While Defendant resolves many enforcement matters amicably, common ground is not always easy to find.  Where necessary, Defendant takes extensions of time or files oppositions to prevent the registration of trademarks that are similar to the INSTAGRAM mark and cover related goods or services, or where use of the mark is likely to create an association with Defendant and thus dilute the INSTAGRAM mark.

      In this case, Defendant will introduce evidence that Plaintiff selected the INSTAPRINTS name with the intent to create an association with Defendant.  Plaintiff's service is literally a service for printing photographs uploaded from Instagram (commonly nicknamed "Insta"), hence the name "Instaprints."  Defendant will also introduce evidence that it notified Plaintiff of its concerns, and offered to work with it on a reasonable resolution and to answer any questions it may have about Instagram's policies.  Plaintiff has rejected Defendant's overtures, and continued in willful violation of Instagram's trademarks and the terms of use for the Instagram platform and has now commenced a legal action in an attempt to thwart Defendant's exercise of its rights to seek redress for Plaintiff's acts.

      In its First Amended Complaint ("FAC"), Plaintiff seeks declaratory judgment of non-infringement, non-dilution, and no false designation of origin; it alleges two claims for a declaratory judgment based on equitable grounds (one for alleged trademark misuse and the other

premised on acquiescence, laches and estoppel); and it also raises two affirmative claims, a patently defective claim for violation of the antitrust laws and a related derivative claim under California Business and Professions Code § 17200 ("UCL").  Defendant hereby moves to dismiss Plaintiff's antitrust claim and the UCL claim, which is predicated on the antitrust claim. Defendant also moves to dismiss the sixth and seventh claims for relief for declaratory judgment based on equitable grounds because those claims are defective as a matter of law.

The antitrust claim and all claims predicated on the antitrust claim included in the FAC should be dismissed for the following reasons:

(1)  The FAC identifies an implausibly overbroad relevant market -- i.e., one for "providing an interactive website or mobile application that allows users to receive goods or services quickly or instantaneously," even though the products that supposedly compete in this market are not interchangeable with or substitutes for one another;

(2)  The alleged relevant market is so broad that Plaintiff cannot allege any plausible basis for inferring that Defendant possesses the requisite degree of market power necessary to state an antitrust claim under Section 2 of the Sherman Act;

(3)  The FAC contradicts allegations made in the original Complaint that Plaintiff "fall[s] outside Defendant's relevant market";

(4) Plaintiff cannot circumvent Defendant's immunity available under the Noerr-Pennington doctrine for petitioning activities before government agencies by claiming that Defendant allegedly engaged in "sham" petitioning because the allegedly improper petitioning was not objectively baseless nor was it directed at a competitor; and

(5) The trademark misuse allegations fail to state an antitrust claim as a matter of law.

Plaintiff's state-law UCL claim, necessarily falls along with the antitrust claim, upon which the UCL claim is predicated.

Finally, Plaintiff's claims for declaratory relief on equitable grounds fail for multiple reasons including that declaratory relief requires an underlying viable claim and there is no legally cognizable affirmative claim for trademark misuse nor one based on the equitable defenses of acquiesce, laches or estoppel; Plaintiff is not entitled to a declaratory judgment that deprives

1  Defendant of a right to petition for grievances; and the defenses raised by Plaintiff are an invalid

2  basis to oppose Defendant's objections to the registration of Plaintiff's "INSTAPRINTS" mark.

3  ## II.    LEGAL STANDARD

4         A court may properly dismiss a claim under Rule 12(b)(6) due to the lack of a cognizable

5  legal theory or the absence of sufficient facts to support a cognizable legal theory.  *Balistreri v.*

6  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "Threadbare recitals of the elements of

7  a cause of action, supported by mere conclusionary statements, do not suffice."  *Ashcroft v. Iqbal*,

8  556 U.S. 662, 678 (2009).  Instead, "[f]actual allegations must be enough to raise a right to relief

9  above the speculative level on the assumption that all of the allegations in the complaint are true."

10  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In this regard, a complaint must

11  contain enough factual evidence to make a claim plausible before a court will allow the case to

12  proceed to discovery.  *Twombly*, 550 U.S. at 559.  As the Supreme Court has cautioned, "it is one

13  thing to be cautious before dismissing an antitrust complaint in advance of discovery…but quite

14  another to forget that proceeding to antitrust discovery can be expensive."  *Id.* at 558.

15  ## III.   ARGUMENT

16         **A.  Plaintiff's Antitrust Claim Fails to State a Claim for which Relief May Be Granted.**

17         Plaintiff's amendments to its Complaint, made in response to Defendant's earlier motion to

18  dismiss, have made it even more obvious that Plaintiff cannot state a valid antitrust claim and that

19  the antitrust claims and all ancillary claims premised on that claim should be dismissed.

20         **1.  Because the FAC Alleges a Legally Deficient and Facially Implausible Relevant**

21              **Market, the Antitrust Claim Fails as a Matter of Law.**

22         Under Ninth Circuit law and generally, to state a valid claim for monopolization or

23  attempted monopolization under Section 2 of the Sherman Act, an antitrust plaintiff must allege a

24  plausible relevant market.  *See Tanaka v. University of So. Cal.* 252 F.3d 1059, 1063 (9th Cir.

25  2001) (citing cases); *Killian Pest Control v. HomeTeam Pest Defense, Inc.*, 2015 WL 3766754 at

26  *2 (N.D. Cal. June 16, 2015) (Chhabria, J.).  A relevant market for antitrust purposes has two

27  components – a product market and a geographic market.  *See Sidibe v. Sutter Health,* 4 F.

28  Supp.3d 1160, 1174 (N.D. Cal. 2013); *Newcal Indus., Inc. v. IKON Office Solution, Inc.*, 513 F.3d

1038, 1045 (9th Cir. 2008).  An antitrust complaint must contain plausible allegations concerning both the product market and geographic market to survive a motion to dismiss.  *Killian Pest Control, Inc.*, Case No. 14-cv-05239-VC, 2015 WL 3766754 at *2; *Sidibe v. Sutter Health*, 51 F. Supp.3d 870, 882-83 (N.D. Cal. 2014).  A relevant product market must encompass all products that customers consider to be reasonable economic substitutes, *i.e.*, reasonably interchangeable with one another, and cannot encompass disparate products that customers cannot or will not substitute for one another.  *See, e.g., Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105; *Sidibe*, 51 F. Supp.3d at 884.  Accordingly, at the pleading stage, if an antitrust plaintiff fails to define its proposed product market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, the alleged relevant market is legally insufficient and subject to dismissal.  *Colonial Medical Group, Inc. v. Catholic Healthcare West*, 2010 WL 2108123 at *3 (N.D. Cal. May 25, 2010) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).  Indeed, an antitrust claim should be dismissed under Rule 12(b)(6) if the "'relevant market definition is facially unsustainable.'"  *Sidibe*, 51 F. Supp. 3d at 883 (N.D. Cal. 2014)(quoting *Newcal, Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044-45 n.3 (9th Cir. 2008)); *see also Big Bear Lodging,* 182 F.3d at 1105 (affirming dismissal for failure to plead adequate geographic market).

Here, Plaintiff has yet again failed to allege a legally cognizable relevant market. As to product market allegations,[1] the FAC defines a facially unsustainable relevant market which could never support a valid antitrust claim.  The FAC recites an alleged relevant product market "of providing an interactive website or mobile application that allows users to receive a good or service quickly or instantaneously."  FAC ¶ 14.  First, the market is alleged only in vague and conclusory terms, which alone warrants dismissal. *Killian Pest Control*, 2015 WL 3766754 at *2 (Chhabria, J.).  Moreover, the above referenced proposed market is so broad that it would necessarily include disparate products that are not reasonably interchangeable.

---

[1] The FAC also contains no allegations and makes no attempt whatsoever to identify the relevant <u>geographic</u> market.  As a threshold matter, this failure provides a sufficient basis, without more, to dismiss Plaintiff's antitrust claim. *Big Bear Lodging,* 182 F.3d at 1105; *see also Tanaka,* 252 F.3d at 1063.

This market literally contains hundreds of thousands, if not millions, of products and services offered over the internet, the vast majority of which have no relation or connection with each other and certainly are not reasonably interchangeable for each other.  This proposed market definition purports to cover not only Plaintiff's website and apparently the websites and software applications offered by the third-party trademark applicants against whom Defendant asserted trademark opposition proceedings, *see* FAC ¶ 108 (the "Third-Party Trademark Applicants"), but also the websites and mobile applications for countless other companies that sell goods and services over the internet.  Indeed, the FAC's proposed market definition would have such a massive scope that it would sweep within its boundaries virtually all internet retailers and service providers – essentially every commercial transaction executed on the internet and via mobile devices.  This unfathomable market breadth would cover businesses such as Amazon.com, Domino's Pizza, Apple, Netflix, 1-800-Contacts, Verizon, Match.com, eBay, Expedia.com, and many others.  These companies largely sell disparate products or services which do not compete.

Looking at the specific companies identified in the FAC, which after Plaintiff amended its complaint now supposedly all fall within this expansive relevant product market, it is clear that these companies do not offer goods or services that any customer would consider to be reasonably interchangeable.  For example, Plaintiff and Defendant both supposedly offer goods or services that would purportedly fall within the scope of the proposed relevant market, but Plaintiff does not and cannot allege that it competes against Defendant.  Rather, Plaintiff carefully avoids claiming a competitive relationship with Defendant, merely alleging that the parties "operate" in the same market.  FAC ¶ 14.  Plaintiff operates an interactive website through which Plaintiff sells artwork for the account of others.  FAC ¶ 12.  But the FAC concedes that Defendant "does not currently sell, nor has it ever sold, artwork or prints from photographs uploaded to Instagram.com".  *Id.* ¶ 28.

And according to Plaintiff, the Third-Party Trademark Applicants offer such non-interchangeable products as:

- "computer medical software and photo software for modifying photos of your abdominal muscles;"
- "online non-downloadable software to facilitate the creation of greeting cards, announcements, slideshows, and invitations;"

- • "personalized decorative household magnets;"
- • "social online services related to tattoo art;"
- • "advertisement services featuring sponsored tags and images;"
- • "services to transmit electronic pet photos;"
- • "on-line software to facilitate online forums for meetings, classes, etc.;"
- • "software that allows sellers to promote goods by publishing user content;"
- • "online social networking services;" and
- • "online video conferencing software."

*Id.,* ¶ 108.

That consumers could not possibly substitute custom magnets for video conferencing software, video conferencing software for greeting cards, or photo printing services for social networking services is obvious and demonstrates why Plaintiff's proposed market is unsustainably broad. The FAC fails to make any attempt to explain how these different products and services could serve as reasonable economic substitutes for one another or be viewed by consumers as reasonably interchangeable. Similarly, the FAC does not address whether any degree of cross-elasticity of demand may exist between and among the products in the alleged relevant market.

A court may consider at the pleading stage whether an antitrust claim, including the proposed relevant market, is plausible and consistent with economic realities. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1110 (7th Cir. 1984); *Rock v. NCAA*, 928 F. Supp. 2d 1010, 1021-22 (S.D. Ind. 2013); *County. of Stanislaus v Pac. G. & E. Co.*, 1994 WL 16798446 (E.D. Cal. Aug, 25, 1994)(quoting and discussing *Carr Carriers*, 745 F.2d at 1110). Indeed, a court is not required to don blinders and ignore commercial reality in deciding whether a plaintiff has adequately alleged a plausible antitrust claim. *See County of Stanislaus,* 1994 WL 16798446 .

Here, common sense and economic reality dictates that many disparate products and services within the alleged relevant market are not reasonably interchangeable and, therefore, the proposed relevant market is unsustainable and thus legally deficient. *See Sidibe,* 2013 WL 2422752 at *15-*16; *Golden Gate Pharmacy Serv. Inc. v. Pfizer, Inc.*, 2010 WL 1541257 at *2-*3 (N.D. Cal. Apr. 16, 2010). Accordingly, the Court should dismiss Plaintiff's antitrust claim for failing to allege a legally cognizable relevant market.

**2.  Plaintiff Cannot Maintain Its Antitrust Claim Because It Failed to Satisfy the Market Power Pleading Requirements.**

Plaintiff fails to state a viable antitrust claim for the related reason that, given the alleged relevant market, Defendant cannot possibly have – and Plaintiff has not alleged that Defendant possesses – the requisite market power necessary to state a claim under Section 2 of the Sherman Act.  To state a claim under Section 2, an antitrust plaintiff must allege facts sufficient to demonstrate that the Defendant has monopoly power (for a monopolization claim) or something dangerously close to monopoly power (for an attempted monopolization claim).  *See Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048 at *8 (N.D. Cal. 2015).  Under circumstances in which an antitrust plaintiff alleges a very broad market in which it would be implausible to infer such market power, a court should dismiss a section 2 claim as legally deficient.  *See Falstaff Brewing Co. v. Stroh Brewery Co.*, 628 F. Supp. 822, 830 (N.D. Cal. 1986); *Futurevision Cable Systems of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 776 (S.D. Miss. 1992).

Here, the excessive market breadth alleged by Plaintiff makes it unreasonable to infer that Defendant could have, or ever obtain, any appreciable share in the alleged relevant market.  Virtually any company that sells or provides any goods or services over the internet or through a mobile app would "compete" in this broad market.  The FAC does not attempt to explain how, under such circumstances, Defendant could possibly possess either monopoly power or anything dangerously close to monopoly power.  It would be futile to even try.  The failure to allege market power at all would be enough, without more, to dismiss Plaintiff's antitrust claim.  *Sidibe*, 51 F. Supp.3d at 883.  This failure, combined with the economic reality that Defendant simply has no chance to obtain market power over such a broadly defined market, dooms Plaintiff's antitrust claim beyond repair.  *See, e.g., Futurevision Cable Sys.*, 789 F. Supp. at 780; *Fallstaff Brewing*, 628 F. Supp. at 830-31.  The Court therefore should dismiss the antitrust claim for failure to plead market power.

**3.  Plaintiff Cannot Cure Its Prior Legally Deficient Allegations by Amending to Incorporate Contradictory Allegations.**

Plaintiff's antitrust claim fails for yet another reason – the FAC has and must contradict the

allegations in its original Complaint to cure the pleading deficiencies regarding antitrust injury and antitrust standing.  The Ninth Circuit has long held "that a plaintiff can . . . plead himself out of a claim" by incorporating contradictory allegations in successive versions of the complaint. *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (amending complaint futile if plaintiff must contradict allegations in original complaint to state a claim).   Moreover, courts often dismiss or strike claims from amended complaints as being "false" or "sham" if they contradict earlier allegations.  *Bradley v. Chiron Corp.*, 136 F. 3d 1317, 1324 (Fed. Cir. 1998) (applying 9th Cir. law); *Fevinger v. Bank of America*, Case No. 5:13-cv-04839-PSG (N.D. Cal., Aug. 4, 2014).

In its original Complaint, Plaintiff alleged that Plaintiff and the Third-Party Trademark Applicants, against whom Defendant had brought the purportedly improper trademark opposition proceedings, "fall outside [Defendant's] relevant market."  Dk#1 ¶ 91.  Indeed, throughout the original Complaint, Plaintiff had taken the position that Defendant's trademark claims lack objective merit, in part, because Plaintiff and the other Third-Party Trademark Applicants offer goods and services wholly distinct from those offered by Defendant, do not compete against Defendant, and have nothing to do with Defendant's business.  *Id*. ¶¶ 3, 26, 91-93.   Given these prior allegations, Defendant moved to dismiss the antitrust claim alleged in the initial complaint because Plaintiff did not participate in the same relevant market in which the antitrust violation purportedly occurred, and, thus lacked antitrust injury and antitrust standing.  Dk# 23 at pp. 5-6.

To cure this obvious deficiency, Plaintiff amended its complaint to: (1) add allegations that Plaintiff and apparently the Third-Party Trademark Applicants supposedly do now "operate" in the same relevant market as Defendant; and (2) delete allegations that most adversaries in the trademark opposition proceedings initiated by Defendant fall outside Defendant's relevant market.  FAC ¶¶ 14; *compare* Dk#1 ¶ 91 (alleging most parties against which Defendant filed opposition proceedings "fall outside Defendant's relevant market") *with* FAC ¶ 100 (omitting the allegations about Defendant's adversaries "fall[ing] outside Defendant's relevant market").  Plaintiff cannot contradict the allegations in its original Complaint to cure the deficiencies cited in Defendant's earlier motion to dismiss.  *See Reddy v. Litton Indus., Inc.*, 912 F.2d at 296; *see also Sprewell v.*

1    *Golden State Warriors*, 266 F.3d at 988.   Plaintiff's antitrust claims should be dismissed on the

2    additional ground that Plaintiff has improperly amended its claim to contradict the allegations in

3    the Original Complaint, which showed as a matter of law that Plaintiff could not maintain its

4    antitrust claim because it lacks antitrust injury and antitrust standing.

### 4.   Plaintiff's Antitrust Claim Seeks to Challenge Conduct Immunized under the *Noerr-Pennington* Doctrine and, thus, Fails to State a Claim.

7          In addition, Plaintiff's antitrust claim suffers from another independent and fatal flaw – it

8    is barred by the *Noerr-Pennington* doctrine.   The *Noerr-Pennington* doctrine broadly immunizes

9    from antitrust scrutiny any efforts to petition a government body for redress.   *See USS-POSCO*

10   *Indus. v. BE&K Construction, Co.*, 31 F.3d 800, 810 (9th Cir. 1994).   Efforts to protect and

11   enforce valid trademark rights, even aggressive enforcement efforts, enjoy complete immunity

12   under *Noerr-Pennington*.   *See Adidas-America Inc. v. Payless Shoesource, Inc.*, 546 F. Supp.2d

13   1029, 1078 n.18 (D. Oreg. 2008).   Similarly, *Noerr-Pennington* immunity extends to petitioning

14   activities before administrative agencies, such as the United States Patent and Trademark Office's

15   Trademark Trial and Appeal Board ("TTAB").   *See Prakash v. Altadis U.S.A., Inc.*, 2012 WL

16   1109918 at *10 (N.D. Ohio Mar. 30, 2012).

17         Here, Plaintiff challenges as an alleged antitrust violation a purported pattern of petitioning

18   activities, specifically oppositions to trademark applications before the TTAB filed by Defendant

19   against Plaintiff and over sixty third parties.   FAC ¶ 100.   The FAC concedes that *Noerr-*

20   *Pennington* extends to Defendant's petitioning activities.   *See* FAC ¶ 105.   But, the Plaintiff

21   claims to have articulated an antitrust claim based on the "sham" exception to *Noerr-Pennington*.

22   *Id*.   Plaintiff, however, has failed to articulate a valid "sham" claim.

23         While the Supreme Court has recognized a sham exception to *Noerr-Pennington*, this

24   exception cannot and does not apply unless the defendant uses the improper petitioning to disrupt

25   a competitor's business.   Indeed, for the sham exception to apply generally, the alleged sham

26   petitioning activity must, among other things seek to "'interfere directly with the business

27   relationships *of a competitor* . . . .'"   *Professional Real Estate Investors, Inc. v. Columbia Pictures*

28   *Indus., Inc.*, 508 U.S. 49, 60-61 (1993) ("*PRE*")(emphasis added) (quoting *Noerr*, 365 U.S. at

144).  Similarly, the legal standard applicable to the multi-suit sham (or pattern of sham) claims considers "whether [the multiple petitions] are brought pursuant to a policy of starting legal proceedings without regard to the merits *and for the purpose of injuring a market rival*."  *USS-POSCO*, 31 F.3d at 811 (emphasis added).  Thus, to fall within the exception, the alleged sham petitioning conduct must be without merits and undertaken to interfere with a competitor's business.

Here neither prong exists.  In the TTAB proceeding referenced in the FAC, the TTAB expressly found that Defendant had alleged a valid ground for opposing Plaintiff's registration application by pleading its prior use and registration as well as a plausible claim for likelihood of confusion.  See Defendant's Request for Judicial Notice; Exhibit "B" at p. 5.  Next, as discussed above, the FAC claims that Plaintiff "operates" in the same relevant market as Defendant but does not allege that Plaintiff underlines competes with Defendant.   FAC ¶ 14.  The alleged relevant market also improperly combines a vast number of goods and services that do not compete against, *i.e.*, are not reasonably interchangeable with, each other.  The administrative proceedings initiated against Plaintiff cannot possibly qualify as a sham because the FAC fails to allege that the petitioning was directed at a competitor.  *PRE*, 508 U.S. at 60-61; *USS-POSCO*, 31 F.3d at 811. The Court should therefore dismiss the antitrust claim as barred by the *Noerr-Pennington* doctrine.

### 5.   Plaintiff's Trademark Misuse Allegations Fail to State a Valid Antitrust Claim.

Finally, Plaintiff's allegations that Defendant purportedly engaged in trademark misuse to extend its "trademark monopoly," FAC ¶ 103, also fail to state a valid antitrust claim.  "Since all that is required of a defendant in order to escape the clutches of an alleged trademark monopoly is to market his product under a different name, the damages which may flow from a trademark infringement action cannot support an antitrust counterclaim."  *The Seven-Up Co.*, 183 U.S.P.Q. at 166, 1974 WL 886 at *1.  Accordingly, efforts to enforce trademark rights, even against a direct competitor, generally cannot inflict serious enough harm on competition or the competitor to support an antitrust claim.  *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 298 F. Supp. 1309, 1314 (S.D.N.Y. 1969),

1    *aff'd* in relevant part, 433 F.2d 686 (2d Cir. 1970)); *RJ Machine Co. Inc. v. Canada Pipeline*

2    *Accessories Co. Ltd.*, 2013 WL 8115445 at \*3-\*4 (W.D. Tex. Nov. 22, 2013).  Trademarks rights

3    confer upon rights-holders virtually no exclusionary powers, especially not any exclusionary

4    powers about which the antitrust laws have concerns.  *See The Seven-Up Co. v. No Cal Corp.*, 183

5    U.S.P.Q. 165, 166, 1974 WL 886 at \*1 (E.D.N.Y May 17, 1974); *California Packing Corp. v. Sun*

6    *Maid Raisin Growers*, 165 F. Supp. 245, 251 (S.D. Cal. 1958), *aff'd* 273 F.3d 282 (9th Cir. 1959).

7    The antitrust laws were simply not intended to prevent any harm that might arise from a trademark

8    owner's efforts to enforce its trademark rights.  *RJ Machine Co. Inc.*, 2013 WL 8115445 at \*3;

9    *The Seven-Up Co.*, 183 U.S.P.Q. at 166, 1974 WL 886 at \*1; *California Packing Corp.*, 165 F.

10   Supp. at 251.  Moreover, vigorous efforts to exercise and enforce trademarks rights do not violate

11   the antitrust laws and are exactly the ''sort of aggressive competition and promotion that antitrust

12   law seeks to protect.'"  *Blue Cross and Blue Shield Ass'n v. Group Hospitalization and Medical*

13   *Services, Inc.*, 744 F. Supp. 700, 719 (E.D. Va. 1990) (citing *Drop Dead Co. v. S.C. Johnson &*

14   *Son, Inc.*, 326 F.2d 87, 96 (9th Cir. 1963), *cert. denied*, 377 U.S. 907, 84 S. Ct. 1167, 12 L.Ed.2d

15   177 (1964)).  Because, as the cases cited above demonstrate, courts have consistently rejected the

16   type of antitrust claims at issue in this action, this Court should dismiss the antitrust claim and the

17   ancillary trademark misuse claims because trademark misuse cannot support an antitrust claim

18   generally and certainly not as alleged here.

19        **6.   The Court Should Dismiss the Antitrust and Related Claims With Prejudice.**

20         A court may properly dismiss claims with prejudice under circumstances such as these in

21   which the plaintiff has had prior opportunity to amend to cure the deficiencies in the complaint or

22   the plaintiff could not cure the deficiencies without contradicting the allegations in the original

23   complaint.  *See, e.g.*, *Mir v. Frosburg*, 646 F.2d 342, 347 (9th Cir. 1980)(court has broad discretion

24   to dismiss with prejudice if plaintiff has had an opportunity to amend previously); *Johnson v.*

25   *Lucent Technologies Inc.,* 653 F.3d 1000, 1012 (9th Cir. 2011) (affirming district court dismissal

26   with prejudice because plaintiff could not amend complaint without contradicting allegations in

27   the current complaint).  Because both are true regarding Plaintiff's antitrust claim, the Court

28   should dismiss with prejudice the antitrust claim and all claims predicated on the antitrust claim.

**B.  Plaintiff's UCL Claims Must Fall along with Its Antitrust Claim.**

Plaintiff's UCL claim is expressly predicated on Defendant's alleged use of its "INSTAGRAM" marks to violate the antitrust laws of the United States.  FAC ¶¶ 113-25.  The applicable authorities have consistently held that extinguishment of the "borrowed" violation extinguishes a plaintiff's UCL claim as a matter of law.  Cases have expressly applied this principle in the antitrust area.  For example, in *Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 875, 107 Cal.Rptr.2d 481 (2001), it was held that a claim alleging conspiracy to violate the antitrust laws in which summary judgment has been properly entered cannot be re-pled under the UCL.  Similarly, in *Chavez v. Whirlpool Corp.*, 97 Cal.App.4th 363, 375, 113 Cal.Rptr.2d 175, 184 (2001), the court held that where an antitrust action by Whirlpool retailers would be barred by a "Colgate" defense, it also bars the UCL claim based on the same alleged antitrust violation.  Because, as demonstrated above, Plaintiff's antitrust claim is fatally defective and must be dismissed, the Court should order the UCL claim dismissed as well.

**C.  Plaintiff's Sixth Count for Declaratory Judgment Relief on Equitable Grounds-Trademark Misuse Fails to State a Claim.**

Plaintiff's sixth claim for relief is for declaratory judgment on equitable grounds – trademark misuse.  Therein, Plaintiff alleges that: "Defendant is prevented from objecting to or instituting any action or proceeding with respect to Plaintiff's use of [sic] registration of its INSTAPRINTS mark because Instagram has misused its trademark rights by attempting to enforce its rights beyond their lawful scope with the intent to stifle competition".  FAC, ¶ 83.  Plaintiff's sixth claim for relief based on trademark misuse must be dismissed for multiple reasons.

First, there is no such thing as an affirmative claim for trademark misuse.  *Loblaw Companies, Ltd. v. Azimi*, 2001 WL 31028016, at *16 (N.D. Cal., October 17, 2001); *Juno Online Services, L.P. v. Juno Lighting, Inc.*, 979 F.Supp. 684, 690 (N.D. Ill. 1997).  Because a declaratory judgment is merely a remedy and requires a viable underlying cause of action, where, as is the case here, there is no cognizable cause of action that would support the declaratory judgment requested, such a claim should not be allowed.  *See DTND Sierra Investments LLC v. Bank of New York Mellon Trust Co., N.A.*, 958 F.Supp.2d 738 (W.D. Tex. 2013)(dismissing declaratory

1   judgment claim in absence of viable cause of action).

2       Second, Count VI of the FAC merely repeats the allegations made in Plaintiff's prior

3   counts.  Specifically, the allegation that forms the basis of Count VI, that Defendant should be

4   barred from instituting an action or proceeding with respect to Plaintiff's use or registration of its

5   INSTAPRINTS mark because Defendant has misused its trademark rights, is also found verbatim

6   in Counts I through V at paragraphs 52, 59, 64, 71 and 80.  Count VI is, thus, redundant and

7   should be stricken.  Fed.R.Civ.Proc. 12(f)("The court may strike from a pleading . . . any

8   redundant, immaterial, impertinent, or scandalous matter.")

9       Finally, granting the relief sought in Count VI of barring Defendant from instituting any

10  action or proceeding to challenge the use or registration of the INSTAPRINTS mark conflicts with

11  the *Noerr-Pennington* doctrine, which evolved from First Amendment principles safeguarding the

12  right to petition the government for redress.  *Empress LLC v. City & County of S.F.*, 419 F.3d

13  1052, 1056 (9th Cir. 2005).  Such relief also transcends the limits on injunctive relief in general.

14  See *Smith v. Silvey*, 149 Cal.App.3d 400, 406-407, 197 Cal.Rptr. 15, 19 (1983)(holding injunction

15  may not be used to prohibit constitutionally protected activity including the right to petition for a

16  redress of grievances).  For these reasons, Count VI should be dismissed.

17      **D.  Plaintiff's Seventh Claim For Relief Based On Equitable Ground-Acquiescence,**

18          **Laches, Estoppel- Should Be Dismissed.**

19      Plaintiff's seventh claim for relief seeks a declaratory judgment that "Defendant is

20  estopped from enforcing any rights it has in the component parts of its INSTAGRAM mark

21  (which it denies) or its INSTAGRAM mark as a whole based on the doctrine of acquiescence,

22  estoppel and laches."  FAC, ¶ 93.  The specific relief Plaintiff is seeking is, once again, to prevent

23  "any further attempt by Defendant to institute any additional action or proceeding with respect to

24  Plaintiff's use or registration of its INSTAPRINTS mark…".  *Id.*

25      This claim for relief should be dismissed as well.  The equitable grounds alluded to by

26  Plaintiff, *i.e.*, laches, acquiescence and estoppel, are indisputably affirmative defenses, and not

27  causes of action.  As noted above, declaratory relief should not be allowed where it is not based on

28  a cognizable cause of action.  *See DTND Sierra Investments LLC*, 958 F.Supp.2d at 753.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**                                                  - 13 -
**CASE NO. 3:15-CV-03610-VC**

1    Moreover, once again, the claim made in Count VII is duplicative of the allegations made in each

2    of the prior counts of the FAC at paragraphs 51, 58, 66, 73 and 79, and, therefore, is redundant.

3            More importantly, even accepting Plaintiff's allegations as true, the equitable doctrines of

4    acquiescence, laches, or estoppel do not bar Defendant's challenge to Plaintiff's application to

5    register the mark INSTAPRINTS.  Many cases have held that acquiescence in the use of a mark

6    does not preclude a party from objecting to its registration.  For instance, in *Coach House*

7    *Restaurant, Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551 (11th Cir. 1991), the petitioner

8    owner of a New York restaurant affirmatively acquiesced in the registrant's use of the "coach and

9    six horses" logo in connection with its Atlanta restaurant for almost 20 years.  However, the

10   Eleventh Circuit overturned the TTAB and the district court's findings of acquiescence as an

11   abuse of discretion, holding:

12              We conclude that the TTAB abused its discretion by failing to
13              observe the distinction in this case between acquiescence as to use
                and acquiescence as to registration.  Although petitioner actively
14              represented that the registrant could use its logo, petitioner did not
                represent or imply that it would allow registrant to register the
15              petitioner's service mark on the federal Principal Register.  Therefore,
                no period of delay could have begun running as to registration, until
16              petitioner had notice that registrant was doing something that would
                generate a claim or right of petitioner….
17

18              The registration was awarded to registrant on December 29, 1981, and
                petitioner discovered the registration and objected to it by February
19              23, 1983.  Thus, the period of delay as to registration was, at most,
                just over a year.  Despite their surprise in seeing its logo on the
20              Principal Register, petitioner was able to object in a short period of
                time.  According to these facts, the period of delay is not
21              unreasonable and certainly not inexcusable under the circumstances.

22              The absence of one element of the acquiescence case is sufficient to
23              deny the equitable relief requested.

24           *Id.* at 1558-59.

25           Similarly, delay-based defenses are consistently rejected where a rights owner timely

26   opposes a trademark application, even where that rights owner had substantial prior opportunity to

27   object to use of a mark.  *See*, e.g., *Salem Commodities, Inc. v. Miami Margarine Co.*, 244 F.2d

28   729, 732 (C.C.P.A. 1957) (rejecting claim of laches grounded in opposer's knowledge of use of

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**                                    - 14 -
**CASE NO. 3:15-CV-03610-VC**

1  applied-for mark "for a substantial period of time" on ground that opposer "could not take action

2  until after [applicant] applied for registration and the application was published for the purpose of

3  opposition"); *Callaway Vineyard & Winery v. Endsley Cap. Grp.*, 63 U.S.P.Q.2d 1919, 1923

4  (TTAB 2002) ("Furthermore, inasmuch as opposer promptly opposed registration of applicant's

5  mark, applicant has no basis for the defense of laches, estoppel or acquiescence.").

6    Plaintiff has not alleged that Defendant's opposition to that application was untimely filed.

7  See FAC, ¶¶ 2, 35, 38 (acknowledging that on February 5, 2014, Defendant filed a Notice of

8  Opposition against Plaintiff's October 1, 2012 application for registration of Plaintiff's

9  "INSTAPRINTS" mark before the United States Patent and Trademark Office's TTAB.)  As the

10  TTAB has already ruled in that proceeding, because the opposition was timely, these defenses fail

11  as a matter of law.  This Court is requested to take judicial notice that Plaintiff's affirmative

12  defenses of equitable estoppel, laches and acquiescence to Defendant's opposition were ordered

13  stricken by the TTAB.  See Defendant's Request for Judicial Notice; Exhibit "B" at pp. 5-7.  This

14  Court should lend its voice to that ruling.

15  **IV.**  **CONCLUSION**

16    For the foregoing reasons, Defendant's motion to dismiss should be granted.

17

18  DATED:  November 9, 2015  Respectfully submitted,

19          KILPATRICK TOWNSEND & STOCKTON LLP

20

21          By: /s/ Dennis L. Wilson
          DENNIS L. WILSON

22          Attorneys for Defendant
        INSTAGRAM, LLC

23

24

25

26

27

28