VIJAY K. TOKE (CA Bar No. 215079)
(vijay@cobaltlaw.com)
MATTHEW S. SLEVIN (CA Bar No. 287968)
(matt@cobaltlaw.com)

COBALT LLP
918 Parker Street, Bldg. A21
Berkeley, CA 94710
Telephone: (510) 841-9800
Facsimile: (510) 295-2401

JOEL T. BERES (CA Bar No. 125890)
(jberes@stites.com)
BRUCE B. PAUL (to be admitted *pro hac vice*)
(bpaul@stites.com)
DAVID B. OWSLEY II (to be admitted *pro hac vice*)
(dowsley@stites.com)

STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Facsimile: (502) 587-6391

MARI-ELISE GATES
(mgates@stites.com)

STITES & HARBISON PLLC
1800 Diagonal Road, Suite 325
Alexandria, VA 22314
Telephone: (703) 837-3932
Facsimile: (703) 518-2952

Attorneys for Plaintiff
PIXELS.COM, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PIXELS.COM, LLC, an Illinois limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>INSTAGRAM, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 3:15-cv-03610-VC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED** |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................ 2

III. LEGAL STANDARD ........................................................................................................ 4

IV. ARGUMENT ..................................................................................................................... 4

    A.  Pixels States a Proper Antitrust Claim. ................................................................... 4

        1.  Instagram's Fraudulent and Intentional Misrepresentations to the
            USPTO and TTAB Negate *Noerr-Pennington* Immunity. ............................ 5

        2.  Instagram has Engaged in a Pattern of Sham Litigation. ................................ 7

            a.  Instagram Has Filed Numerous Notices of Oppositions for
                Purposes of Harassing Competitors and Potential Competitors ......... 7

            b.  Instagram's Own Actions Confirm that It Believes Pixels is a
                Competitor. ....................................................................................... 8

        3.  Pixels Alleges a Plausible Antitrust Theory. .................................................. 9

    B.  Pixels's California Unfair Competition Claim is Viable. ........................................ 12

    C.  Pixels's Claims for Declaratory Relief on Equitable Grounds are Proper................ 13

V.  CONCLUSION.................................................................................................................. 15

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED

# TABLE OF AUTHORITIES

**Page**

## Cases

*Activision Publ'g, Inc. v. Gibson Guitar Corp.*, 2009 U.S. Dist. Lexis 21931
(C.D. Cal. Feb. 26, 2009) ................................................................................. 14

*Allan Block Corp. v. Cnty. Materials Corp.*, 512 F.3d 912 (7th Cir. 2008) ..................................... 14

*Allied Tube & Conduit Corp., v. Indian Head, Inc.*, 486 U.S. 492 (1988) ........................................ 5

*Apple Inc. v. Psystar Corp.*, 2009 WL 303046 (N.D. Cal. 2009) ................................................... 14

*Apple Inc. v. Samsung Elec. Co.*, 2012 WL 1672493 (N.D. Cal. 2012) .................................... 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 4, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 4, 10

*Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297 (3d Cir. 2007) ................................................. 11

*Broadcom v. Qualcomm*, 501 F.3d 297 (3d Cir. 2007) ............................................................... 2

*Cal. Motor Transp. v. Trucking Unlimited,* 404 U.S. 508 (1972) ............................................. 5, 7, 8

*Cel-Tech Commcn's, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163 (1999) ................................... 12

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ................................................ 4

*Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765 (S.D. Tex. June 19, 2013) ........................... 14

*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 381 F.2d 879 (7th Cir. 1967) ................................. 5

*Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823 (E.D. Va. January 10, 2001) ... 13, 14

*Edible Arrangements Int'l, LLC v. 1-800-Flowers.com, Inc.*, No. 3:14-cv-01744 (D. Conn.) ........... 7

*Gen Physio., Inc. v. Sybaritic, Inc.*, 2006 U.S. Dist. LEXIS 3796 (E.D. Miss. Feb. 1, 2006) ............ 7

*Harris v. Amgen, Inc.*, 738 F.3d 1026 (9th Cir. 2013) ............................................................. 4

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ............................................ 6

*In re Capacitors Antitrust Litig.*, 2015 WL 3398199 (N.D. Cal. May 26, 2015) ............................. 9

*Kalo Inoculant v. Funk Bros. Seed*, 161 F.2d 981 (7th Cir. 1947) .............................................. 15

*Kottle v. N.W. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998) ...................................................... 7

*Livingston Downs Racing v. Jefferson Downs*, 192 F. Supp. 2d 519 (M.D. La. Aug. 13, 2001) ........ 7

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ................................................................. 4, 12

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

# TABLE OF AUTHORITIES

**Page**

*Mentor Graphics Corp. v. Quickturn Design Sys.*, 2003 U.S. Dist. LEXIS 16194

   (N.D. Cal. July 24, 2003) ................................................................... 14

*N.W. Corp. v. Gabriel Mfg. Co., Inc.*, 1998 U.S. Dist. LEXIS 12763 (N.D. Ill. Aug. 14, 1998) ........ 7

*Nu Sci. Corp. v. eFasteam.com*, 2004 U.S. Dist. LEXIS 17763 (N.D. Cal. Aug. 24, 2004) ............. 13

*Practice Mgmt. Info. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir.1997) ........................................... 14

*Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237 (1952) ................................................................. 14

*Rock River Commc'ns, Inc. v. Universal Musical Grp.*, 730 F.3d 1060 (9th Cir. 2013) ..................... 8

*Seaboard Int'l v. Cameron Int'l*, 2013 U.S. Dist. LEXIS 106784 (E.D. Cal. July 30, 2013) ........... 14

*Steckman v. Hart Brewing*, Inc., 143 F.3d 1293 (9th Cir. 1998) ....................................................... 12

*T.N. Dickson Co. v. LL Corp.*, 1985 WL 14175 (D. Conn. Apr. 30, 1985) ......................................... 5

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2015 U.S. Dist. LEXIS 98939

   (C.D. Cal. July 8, 2015) ...................................................................... 15

*USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800

   (9th Cir. 1994) ........................................................................................ 7

*Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965) ...................................... 5

**Statutes**

15 U.S.C. § 1051 ................................................................................................. 5

California Business & Professions Code § 17200 .................................................. 12, 13

**Other**

1A Callman § 4.53, at 3 ...................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 4, 9

Fed. R. Civ. P. 15 ............................................................................................... 12

Fed. R. Civ. P. 15(a) ........................................................................................... 12

Fed. R. Civ. P. 8(a) ............................................................................................. 10

Hovenkamp et al., *IP & Antitrust* §11.3b n.128 ..................................................... 5

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

# TABLE OF AUTHORITIES

**Page**

William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*, 21 Berkeley Tech. L.J. 1547

(2006)..............................................................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED

# I.    INTRODUCTION

Pixels.com, LLC ("Pixels") filed this lawsuit to challenge a pattern of trademark misuse and predatory acts whereby Instagram LLC ("Instagram") has sought to leverage its recently acquired market dominance to clear the field of competition for services ancillary to Instagram's social media platform.  In June 2012, Pixels launched www.instaprints.com, which allowed users to purchase and print digital photos, including from Instagram users. When it launched the site, Pixels received approval from Instagram regarding Pixels's business model and the use of the INSTAPRINTS mark. First Am. Compl., Docket Entry 28, ("FAC") ¶ 15-18. At the time, Instagram's Terms of Use stated "[w]hile you cannot use the word 'Instagram' or 'IG' in your product's name, it's ok to use one (but not both) of the following: 'Insta' or 'gram.'" *Id.* ¶ 16. Pixels followed Instagram's explicit guidance when launching the Instaprints business and investing substantial resources in the process, including an application for INSTAPRINTS. *Id.* ¶ 35.

After the launch of instaprints.com in August 2012, the FTC permitted the merger of Instagram and Facebook, which created the most dominant entity in the U.S. market for online social media and file sharing. *See* Ex. A to Request for Judicial Notice ("RJN"). Following the merger, Instagram reversed course and systematically began to attack the ancillary businesses it had originally approved and supported. In February 2014, Instagram filed a Notice of Opposition in the USPTO to Pixels's INSTAPRINTS mark and, in September 2015, terminated the credentials for the Instaprints mobile device application, thus restricting access to Instagram user content.  *Id.* ¶27, 38.

Instagram took similar action against numerous other entities. *Id.* ¶ 83. In its ongoing filings at the USPTO, Instagram has made multiple false declarations in support of its putative trademark rights. The apparent motive of Instagram's post-merger activity is to leverage its recently acquired market position through predatory acts and remove competition in ancillary services so that Instagram may lay claim to that business itself. *Id.* ¶ 45, 52, 83-85, 96-112. It is objectively baseless, and in bad faith, for Instagram to attempt to expand it trademark rights and accuse Pixels of willfully infringing any INSTAGRAM mark when Instagram explicitly approved Pixels's use of the INSTAPRINTS mark in 2012. *Id.* ¶ 84, 96-112.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED

1    These facts—which are not disputed in Instagram's motion to dismiss—are more than

2    sufficient to state plausible claims for federal antitrust violations (Count 8), unfair business

3    practices under California law (Count 9), declaratory judgment of trademark misuse (Count 6), and

4    declaratory judgment of acquiescence/laches/estoppel (Count 7). There is no silver bullet defense to

5    these claims. Pixels's theory of antitrust violation has sound legal support. *See, e.g., Broadcom v.*

6    *Qualcomm*, 501 F.3d 297 (3d Cir. 2007) (holding that the defendant's use of market power in one

7    market segment in an attempt to monopolize additional related markets segments constituted a

8    plausible antitrust claim). And Pixels has made sufficient allegations of "sham" activity, which must

9    be presumed as true at the pleading stage, to overcome Instagram's assertion of *Noerr-Pennington*

10   immunity. Finally, it is appropriate for Pixels to use the Declaratory Judgment Act to fend off

11   Instagram's tangible threats of trademark infringement—indeed, Instagram's motion confirms that

12   the threat of an infringement claim is real and that a sufficient controversy exists. FAC ¶ 37. The

13   motion to dismiss should be denied.

14   **II.    BACKGROUND**

15   Pixels owns and operates the website www.instaprints.com, which allows individuals to

16   instantaneously upload their artwork for instant purchase by consumers in the form of prints,

17   greeting cards, and more. *Id.* ¶ 12.  Though Pixels's website allows users to upload any photos to

18   the site, it also uses the Instagram technical platform, or application programming interface ("API"),

19   to allow users to upload photos from their Instagram social media photo sharing platform. *Id.* ¶ 17.

20   Instagram originally encouraged developers like Pixels to use the Instagram API. *Id.* ¶ 21. Before

21   launching its website, Pixels requested and received API credentials from Instagram for use in

22   connection with its instaprints.com business. *Id.* ¶ 17. These API credentials permit one website to

23   securely obtain data from another. *Id.* To receive API credentials from Instagram, Pixels was

24   required to register with Instagram, which involved providing Instagram with the INSTAPRINTS

25   mark and instaprints.com URL. *Id.* ¶ 18.

26   Instagram provided guidance to those developers seeking API credentials for selecting and

27   adopting marks to use in connection with their apps. *Id.* ¶ 15. The API "Trademark and Brand

28   Guidelines" published on Instagram's website in April 2012 stated that Instagram would not object

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED

1   to third-parties' use of the component "insta" or the component "gram" in trademarks, but would

2   only take issue with use of the INSTAGRAM composite mark. *Id.* ¶ 15-16. Pixels consulted these

3   Guidelines before selecting its mark and launching its business in June 2012. *Id.* ¶ 15.

4        Instagram had actual knowledge and approved use of Pixels's INSTAPRINTS mark in June

5   2012. *Id.* ¶ 17. Yet, in February of 2014, Instagram filed a Notice of Opposition before the

6   USPTO's Trademark Trial and Appeal Board ("TTAB"), objecting to registration of Pixels's mark

7   and claiming that Pixels's use and registration of its INSTAPRINTS mark infringes and dilutes

8   Instagram's rights in its INSTAGRAM marks. *Id.* ¶ 2. Instagram's opposition is in stark contrast to

9   Instagram's former and long-standing policy of allowing, and even encouraging, apps using the

10   Instagram technical platform to incorporate the descriptive components "insta" or "gram" in their

11   trademarks. *Id.* ¶ 21. This prior policy reflected Instagram's understanding of the unprotectable

12   nature of the "insta" and "gram" components. *Id.*

13        In April 2012, Facebook Inc. purchased Instagram for a purported $1 billion. *Id.* ¶ 34. Wary

14   that this acquisition had the potential to harm competition, the FTC investigated this merger until

15   August 2012. *See* Ex. B to RJN. At the time of the acquisition, Facebook was the dominant social

16   network with a substantial market share. *See* Ex. C to RJN.  Post-merger, the combined entity has

17   by far the most dominant U.S. market share for social media and file sharing websites. The FTC and

18   Britain's Office of Fair Trading investigated concerns that the combined entity could exert too

19   much power over the photo sharing market. *See* Ex. D to RJN.

20        Following the merger, Instagram launched its baseless trademark enforcement campaign

21   over the unprotectable component parts of its composite INSTAGRAM mark to clear its path to

22   enter product and service markets related to its social media platform. Instagram has engaged in a

23   pervasive pattern of predatory conduct and intentional misrepresentations in its dealings with the

24   TTAB during its trademark opposition process. *Id.* ¶ 99-107. After the Facebook acquisition,

25   Instagram adopted new terms of use that directly contradicted its previous terms of use in force at

26   the time Pixels adopted its INSTAPRINTS mark. *Id.* ¶ 37.  Instagram coupled this diametric shift in

27   its terms of use with an aggressive campaign, engaging in exclusionary behavior through cease and

28   desist letters, API credential terminations, trademark opposition proceedings, and/or filing

1  extensions of time to initiate opposition proceedings directed to a large number of marks belonging

2  to competitors and potential competitors. *Id.* ¶ 82.

3      Instagram has opposed registration of over 60 trademarks and filed extensions of time to

4  oppose at least 15 more. *Id.* ¶ 83.  In doing so, Instagram is making intentional misrepresentations to

5  the TTAB, claiming that it owns exclusive rights in the individual descriptive components "insta"

6  and "gram," when in fact it does not and cannot. Instagram's campaign of sham litigation is an

7  unlawful attempt to claw back rights to the descriptive components of its INSTAGRAM mark to

8  which it acquiesced through its own policies and conduct. Instagram's pattern of trademark misuse

9  and anticompetitive behavior is aimed at increasing cost to other technology companies to obtain

10  goodwill that it does not own and clearing the field of competition for services ancillary to

11  Instagram's social media platform so that Instagram can capture that business itself.

12  **III.   LEGAL STANDARD**

13      In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-

14  pleaded factual allegations" in a complaint and must draw all reasonable inferences in the light most

15  favorable to the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Daniels-Hall v.*

16  *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  While judicial review is generally limited to

17  the face of a complaint, courts may properly consider "documents incorporated into the complaint

18  by reference, and matters of which a court may take judicial notice." *Harris v. Amgen, Inc.*, 738

19  F.3d 1026, 1035 (9th Cir. 2013) (citation omitted). To withstand a motion to dismiss, a complaint

20  must merely allege sufficient factual matter, accepted as true, "to state a claim to relief that is

21  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If a complaint fails to

22  state a plausible claim, "[a] district court should grant leave to amend even if no request to amend

23  the pleading was made, unless it determines that the pleading could not possibly be cured by the

24  allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation omitted).

25  **IV.   ARGUMENT**

26      **A.   Pixels States A Proper Antitrust Claim.**

27      Instagram does not challenge Pixels's factual allegations concerning Instagram's sham

28  enforcement activity, its change in policy following the Facebook merger, or the resulting harm to

competition in the market for services ancillary to Instagram's social media platform (such as that offered by instaprints.com). These allegations are sufficient to state a plausible antitrust claim. Instagram argues that its conduct is immunized under the *Noerr-Pennington* doctrine and that there is insufficient detail in the allegations concerning market power and the relevant market. Pixels has pleaded a plausible antitrust theory and has alleged sufficient facts to negate Instagram's asserted immunity on two alternative grounds: (1) fraud on the USPTO, and (2) a pattern of sham petitioning. Courts have expressed increasing reluctance to dismiss at the pleading stage antitrust challenges to bad faith enforcement of intellectual property rights, given the fact-intensive inquiry needed to address these claims.  *See* Hovenkamp et al., *IP & Antitrust* §11.3b n.128.

### 1.    Instagram's Fraudulent and Intentional Misrepresentations to the USPTO and TTAB Negate *Noerr-Pennington* Immunity.

The Supreme Court holds that *Noerr-Pennington* will not immunize unethical and deceptive conduct before administrative agencies and adjudicatory bodies.  *Allied Tube & Conduit Corp., v. Indian Head, Inc.*, 486 U.S. 492, 499-500 (1988); *Cal. Motor Transp. v. Trucking Unlimited,* 404 U.S. 508, 512-13 (1972). While Instagram would have this Court believe that the *Noerr-Pennington* doctrine protects any enforcement efforts by a trademark holder, the doctrine is not without bounds. For example, it will not immunize fraud on the USPTO committed during the application process. *See, e.g.*, *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174-75 (1965). Courts routinely recognize an exception to *Noerr-Pennington* immunity where a party fraudulently procures trademark registrations and then uses them to attack competitors. *See Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 381 F.2d 879, 883 (7th Cir. 1967); *T.N. Dickson Co. v. LL Corp.*, 1985 WL 14175, at *6 (D. Conn. Apr. 30, 1985). Instagram has done precisely that.

Instagram committed fraud on the USPTO both in prosecuting marks and in its TTAB enforcement campaign. Instagram has now even gone so far as to file a trademark application with the USPTO for the component "insta." *See* Ex. E to the RJN. The filing of that application required Instagram to sign a declaration alleging that, to the best of its knowledge, no other person has the right to use the mark "INSTA" in commerce. *See* 15 U.S.C. § 1051 (to be considered by the USPTO, an application must include a statement verifying the applicant's exclusive use of the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

applied-for term). Instagram clearly knew that multiple third parties, including Pixels, have been using the term "insta" and other terms containing the component "insta" for years to identify and describe goods and services that can be provided instantaneously. The USPTO would not have passed for publication the application for "INSTA" but for Instagram's intentionally deceptive declaration to the USPTO that no others had the right to use the term in commerce in connection with the goods included in the application. Furthermore, Instagram has not used the term "insta" separate and apart from the camera design component. This approval of the "INSTA" application plays a material role in Instagram's scheme to harass potential competitors. It gives unwarranted teeth to Instagram's false assertion that it owns rights in a descriptive component and gives Instagram a larger arsenal of marks to assert against third parties, including over component parts of its mark that it knows—and has even admitted—are descriptive and unprotectable.

The FAC contains detailed allegations about Instagram's fraud on the TTAB in attempting to enforce trademark rights in descriptive components of its mark to which it has no claim. FAC ¶ 99-107. Each of these instances of fraudulent activity negates any immunity Instagram may claim. Instagram is not legitimately enforcing its INSTAGRAM mark.  Rather, it is fraudulently claiming rights in these unprotectable component parts—which have existed and properly belong in the public domain—for anticompetitive purposes rather than policing for actual infringements of its mark. Given Instagram's initial terms and conditions, which demonstrate that Instagram knew it could not claim exclusive rights in the descriptive and weak components "insta" and "gram," Instagram's claims to the TTAB that it has rights in these terms must be deemed intentional misrepresentations not protected by *Noerr-Pennington* immunity. *See In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 374 (S.D.N.Y. 2002).

This is not innocuous enforcement by a rights holder. Pixels's allegations demonstrate that Instagram intentionally deceived the PTO and the TTAB about owning exclusive rights in non-protectable terms.[1] FAC ¶ 99-107. Asserting trademark rights beyond the scope justified under

---

[1] Instagram misconstrues Plaintiff's trademark misuse defense, arguing that the mere enforcement of trademark rights cannot serve as the basis for an antitrust claim. Defendant's Memorandum in Support of its Motion to Dismiss, Docket Entry 37 ("Def. Mem.") p. 11-12. It is not mere enforcement of Instagram's INSTAGRAM mark about which Plaintiff complains. Instagram improperly seeks to enforce rights it doesn't have in the component parts of its mark. Courts have

6

1   trademark law can violate the antitrust laws when "it leads to unreasonable restraint of trade, or

2   prevents entry of new competitors into the market." 1A Callman § 4.53, at 3. A bad faith assertion

3   of trademark rights can form the basis of a federal antitrust claim. *Gen Physio., Inc. v. Sybaritic,*

4   *Inc.*, 2006 U.S. Dist. LEXIS 3796, *9 (E.D. Miss. Feb. 1, 2006) (citing *Kellogg v. Nat'l Biscuit*, 71

5   F.2d 662, 665-66 (2nd Cir. 1934) ("[I]f a person having no substantial claim to a trade-mark . . .

6   uses the claim in bad faith to threaten a competitor and customers with lawsuits in order to prevent

7   dealings by the latter in that commodity, they would seem to be steps in an attempt to obtain a

8   monopoly.")); *see N.W. Corp. v. Gabriel Mfg. Co., Inc.*, 1998 U.S. Dist. LEXIS 12763 (N.D. Ill.

9   Aug. 14, 1998); *Edible Arrangements Int'l, LLC v. 1-800-Flowers.com, Inc.*, No. 3:14-cv-01744 (D.

10  Conn.). Here, Instagram is intentionally misrepresenting the scope of its rights for anticompetitive

11  purposes. Such conduct does not carry immunity.

12              **2.    Instagram has Engaged in a Pattern of Sham Litigation.**

13          Pixels's antitrust claim states a legally viable sham claim based on a pattern of repetitive

14  petitioning activities. *Noerr-Pennington* immunity does not extend to a pattern or practice of serial

15  filings brought without regard to their merit undertaken with a purpose to injure market rivals. *See*

16  *Cal. Motor Transp.*, 404 U.S. at 513; *Kottle v. N.W. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998)

17  (relying on *Cal. Motor Transp.*). In evaluating a pattern claim "the question is not whether any one

18  of them has merit - some may turn out to, just as a matter of chance - but whether they are brought

19  pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of

20  injuring a market rival." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades*

21  *Council*, 31 F.3d 800, 811 (9th Cir. 1994) (citation omitted). Under this standard, some petitioning

22  activities in the pattern may have objective merit without undermining the sham claim. *See*

23  *Livingston Downs Racing v. Jefferson Downs*, 192 F. Supp. 2d 519, 538 (M.D. La. Aug. 13, 2001).

24              **a.    Instagram Has Filed Numerous Notices of Oppositions for Purposes of**

25                      **Harassing Competitors and Potential Competitors.**

26          Pixels has alleged facts in the FAC sufficient to trigger the pattern exception to *Noerr-*

27  _____

28  recognized that trademark misuse can serve as the basis of an antitrust claim. *See, e.g., N.W. Corp.*, 1998 U.S. Dist.
    LEXIS 12763, at *25.

1  *Pennington* immunity.  The FAC details how Instagram has opposed registration of at least 60

2  marks and filed extensions of time to oppose at least 15 more.  FAC ¶ 83.  In doing so, Instagram

3  made intentional misrepresentations to the TTAB, falsely claiming that it owns exclusive rights in

4  the descriptive components "insta" and "gram" when it does not.  The FAC contains allegations

5  establishing that, to harass and interfere with its competitors' and potential competitors' businesses,

6  Instagram has threatened to bring and has brought opposition proceedings against competitors and

7  potential competitors for doing nothing more than using descriptive and otherwise unprotectable

8  terms necessary to describe their goods and services.

9        Instagram's litigation campaign is objectively baseless such that no reasonable litigant in

10  Instagram's position could expect a favorable outcome on the merits.  Instagram is using the

11  administrative process of enforcing trademark rights it claims to have as an anticompetitive weapon.

12  This constitutes sham litigation and eliminates any available claim of immunity under the *Noerr-*

13  *Pennington*. Instagram is using the opposition process before the TTAB and its dominant position in

14  the social media photo sharing market to pave the way for Instagram to gain quick market share in

15  ancillary markets Instagram has not yet entered. Instagram has filed or threatened to file an

16  opposition proceeding[2] against just about every competitor or potential competitor that has dared to

17  use the term "insta" or "gram," merely for using descriptive terms that these third parties had every

18  right to use. These actual and threatened litigation tactics have placed significant financial strain on

19  third parties and significantly chilled competition. *Cal. Motor Transp.*, 404 U.S. at 511 (pattern of

20  petitions to administrative and judicial bodies could qualify as sham under *Noerr-Pennington*).

21        **b.    Instagram's Own Actions Confirm that It Believes Pixels is a Competitor.**

22        Instagram claims that the FAC "does not and *cannot* allege that [Pixels] competes against

23  Defendant." Def. Mem. p. 5. Yet, Instagram's own conduct indicates that it believes that the parties

24  do, or will, compete.[3] Instagram has asserted a likelihood of consumer confusion claim in its Notice

25

---

26  [2] This Circuit has recognized that a cease and desist letter may qualify as sham petitioning. *Rock River Commc'ns, Inc. v. Universal Musical Grp.*, 730 F.3d 1060, 1068-69 (9th Cir. 2013).

27  [3] For purposes of trademark law, the parties do not compete because Pixels does not offer social media photo sharing services, and consumers will therefore not likely be confused between the two parties' offerings, especially given the ubiquity and descriptiveness of the shared "insta" component of the parties' marks. However, Instagram's own activities have indicated that it believes the parties compete, or at least will, for the purposes of Instagram's specious enforcement

28

8

1   of Opposition filed with the TTAB, alleging that Pixels's services are related to Instagram's goods

2   and services and that the parties operate in the same trade channels. Ex. F to RJN, p. 3-5.

3   Instagram's own allegations contradict its own statements in its motion to dismiss.

4         In addition to these allegations that Instagram views Pixels as a competitor, Instagram has

5   explicitly represented its own interest in entering into the exact market in which Pixels resides. In its

6   application for a new INSTA-formative mark, INSTASTOP, Instagram has represented to the

7   USPTO its bona fide intent to use that mark for photo and other printing services, photo booths, and

8   advertising. Ex. G to RJN. These statements to the USPTO belie Instagram's claim in its pending

9   motion to dismiss that the parties do not compete. Instagram actually believes that Pixels's business

10  is squarely within Instagram's current, or imminent, business. These public admissions undeniably

11  undercut Instagram's argument that the parties are not competitors for the purposes of Pixels's

12  antitrust claims.

13             **3.**      **Pixels Alleges a Plausible Antitrust Theory.**

14        Instagram claims that Pixels has pleaded a facially implausible market and has failed to

15  satisfy the market power pleading requirements.  Pixels disagrees. The FAC properly alleges that

16  Instagram has market power in its field and that it is using that market power to unlawfully stifle

17  competition by competitors and potential competitors. The FTC investigation of the

18  Facebook/Instagram merger is an indication of plausible market power. Pixels need only provide

19  facts sufficient to establish a claim that is "plausible on its face." *In re Capacitors Antitrust Litig.*,

20  2015 WL 3398199, *3 (N.D. Cal. May 26, 2015). Factual allegations in the FAC must only assert a

21  right to relief that is above speculative. *Id*. *4. Because the validity of the relevant market is

22  typically a "factual element rather than a legal element, alleged markets may survive scrutiny under

23  Rule 12(b)(6)." *Apple Inc. v. Samsung Elec. Co.*, 2012 WL 1672493, *4 (N.D. Cal. 2012). Thus, an

24  antitrust complaint survives a Rule 12(b)(6) motion that attacks the definition of the relevant market

25

26  _____

27  campaign over the unprotectable component parts of the INSTAGRAM mark. Such allegations do not contradict
    Pixels's previous allegations.Trademark law protects against different injuries than the Sherman Act. For purposes of

28  antitrust violations, Pixels falls within Instagram's relevant market.

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED**

1  "unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal

2  defect." *Id*. It does not.

3     Under Federal Rule of Civil Procedure 8(a), Pixels must plead "enough facts to state a claim

4  to relief that is plausible on its face" with sufficient specificity to "give the defendant fair notice of

5  what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (citation and

6  quotation marks omitted). The Federal Rules do not require "detailed factual allegations," but

7  require Pixels to simply give Instagram notice of the claims brought against it. *Iqbal*, 556 U.S. at

8  678 (citation omitted). The market as alleged encompasses the United States as a whole since

9  mobile apps and websites are accessible anywhere there is an Internet connection. Thus, the

10 geographic scope of the market for the types of goods and services offered by those in the relevant

11 market is clear, even though not explicitly stated in the complaint. However, if the obvious must be

12 stated, Pixels can easily amend to make clear the geographic scope of the relevant market.

13     Instagram further argues that the relevant market is implausibly broad. Instagram overstates

14 the breadth of the defined market. The market as alleged in the FAC derives from Instagram's own

15 conduct. Instagram's own broad, baseless litigation campaign establishes that it views numerous far

16 flung companies as competitors. For example, Instagram has filed oppositions against companies

17 that offer social networking for a dating club (Ex. H to RJN), social networking on health-related

18 topics (Ex. I to RJN), sending of electronic greeting cards (Ex. J to RJN), advertising services for

19 others (Ex. K to RJN), and the sharing of prayers (Ex. L to RJN). Instagram, using its market power

20 and vast resources, evaluates each claim it brings before the USPTO, so it must feel that each

21 defendant in an opposition proceeding constitutes competition, since it claims a likelihood of

22 confusion between these applicants' marks and its own in each of its oppositions. Market definitions

23 that span non-interchangeable technologies can constitute a valid market for antitrust purposes

24 where the alleged anticompetitive acts were aimed at monopolizing such disparate markets through

25 anticompetitive means. *See, e.g., Apple Inc.*, 2012 WL 1672493, *5 (ruling that a market spanning

26 multiple non-interchangeable technologies where the antitrust allegations involved the defendant

27 using its monopoly power to enter into—and thereby combine—these disparate technology markets

28 through anticompetitive means). The market definition itself is plausible and adequately defined.

1    However, if the Court determines that Instagram's own definition of its market, as

2  established by its own conduct, is implausibly broad, Pixels requests leave to amend the complaint

3  to allege the relevant market as the social media photo sharing market throughout the United States.

4  Instagram is using its market power there to exert control of ancillary markets (such as the market

5  for printing service that Instaprints provides) by using specious trademark claims as a mechanism of

6  eliminating potential competitors. Such behavior—where a company with market power in its

7  market segment uses that power to more quickly and effectively establish itself in other ancillary or

8  related markets—is actionable under Section 2 of the Sherman Act. *See, e.g., Broadcom Corp. v.*

9  *Qualcomm, Inc.*, 501 F.3d 297 (3d Cir. 2007) (holding that the defendant's use of its monopoly

10  power in one market segment to monopolize additional related market segments constituted a

11  plausible antitrust claim). This theory comports with common sense and economic realities. There is

12  indeed a reason for Instagram to do what it is doing:  to attempt monopolization of markets related

13  to its dominant social media platform.

14    Instagram has represented under oath that it intends to enter into several of these ancillary

15  markets, including Pixels's, in its pending trademark application for the mark INSTASTOP. *See* Ex.

16  G to RJN. That application seeks to expand Instagram's offerings beyond the social media photo

17  sharing market to, among others, printing, photo booths, and advertising. Despite having actively

18  encouraged third parties to adopt marks incorporating the descriptive components of the

19  INSTAGRAM mark, Instagram has now reversed course and engaged in an aggressive campaign,

20  leveraging its market power in the social media photo sharing market to eliminate potential

21  competitors before it enters markets ancillary to its own in an attempt to monopolize those markets.

22    The allegations of market power are implied from the allegations of the size and prominence

23  of Instagram. Indeed, based on Instagram's anticompetitive actions alleged in this action, federal

24  regulators' initial reasoning for conducting investigation into the Facebook/Instagram merger were

25  sound. Perhaps that investigation would have come out differently if regulators had had the benefit

26  of knowing the anticompetitive behavior Instagram would enter into within a short timeframe.

27    If the Court concludes, however, that the market power and market definitions supporting

28  Pixels's antitrust claims have not yet been sufficiently pleaded, Pixels can easily do so and

11

1    respectfully requests leave to amend under Rule 15. Under Rule 15(a), leave to amend "shall be

2    freely given when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . .

3    [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*, 203

4    F.3d at 1127. The Court should not dismiss Pixels's antitrust claim unless it is clear that amendment

5    could not possibly cure the deficiencies in the FAC. *Steckman v. Hart Brewing*, Inc., 143 F.3d 1293,

6    1296 (9th Cir. 1998). Simple amendment can alleviate all Instagram's asserted grievances regarding

7    the level of detail in Pixels's pleading.

8         **B.    Pixels's California Unfair Competition Claim is Viable.**

9         California Business & Professions Code § 17200 includes in the definition of unfair

10   competition "any unlawful, unfair or fraudulent business act or practice." The scope of the statute is

11   broad and encompasses numerous anticompetitive business practices and practices injurious to

12   consumers. *Cel-Tech Commcn's, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

13   Notably, an act or practice may be actionable as "unfair" under § 17200 even if it is not "unlawful."

14   *Id*. An act is "unfair" if the conduct "threatens an incipient violation of an antitrust law, or violates

15   the *policy or spirit* of one of those laws because its effects are comparable to or the same as the

16   violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal.

17   4th at 187 (emphasis added). As explained above, Pixels has stated a valid claim under the Sherman

18   Act. These anti-competitive acts render Instagram liable for violations of § 17200 as well. However,

19   Pixels's § 17200 claims do not rest solely on antitrust violations by Instagram. As alleged

20   throughout the FAC, Instagram has engaged in trademark misuse based on its acquiescence of any

21   arguable rights it could have in the descriptive, inherently weak component parts of its

22   INSTAGRAM mark.  Pixels's § 17200 claims are therefore not solely predicated on violations of

23   the Sherman Act, but are also grounded in other policies under trademark law.

24        For instance, Pixels has alleged that Instagram "is engaging in other anti-competitive acts

25   with respect to the components "insta" and "gram," including threatening communications with the

26   specific intent of stifling competition and reserving future business to itself, resulting in actual

27   damages to Pixels and others through expenses incurred to defend against opposition challenges at

28   the USPTO, and potential uncertainty regarding further investment in Pixels's business and other

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED

1  businesses associated with the opposed marks." FAC ¶ 120.  These undisputed alleged acts,

2  standing alone, constitute unfair competition under § 17200.  Even assuming arguendo that such

3  conduct does not constitute a violation of the Sherman Act per se, it still undermines the policy or

4  spirit of those laws and has harmed Pixels and other similarly-situated third parties, which

5  constitutes a properly pleaded, independent basis for the § 17200 claim. Even if this Court were to

6  dismiss Pixels's antitrust claims, Pixels's claim under § 17200 may stand alone. Defendant's motion

7  to dismiss as to the ninth claim for relief for violation of § 17200 should be denied.

8  **C.   Pixels's Claims for Declaratory Relief on Equitable Grounds are Proper.**

9  Instagram is correct that trademark misuse, acquiescence, laches, and estoppel are

10  affirmative defenses. However, Instagram misunderstands the nature of Plaintiff's claim for

11  declaratory judgment on those grounds. Contrary to Instagram's assertions, Pixels is not asking for

12  relief based on trademark misuse, acquiescence, laches, and estoppel as affirmative claims; instead,

13  Pixels is asking the court for a declaration that these defenses render any trademark infringement

14  claim unenforceable in this context.[4] Seeking declaratory relief on affirmative defenses is

15  permissible in these circumstances.

16  In *Dunn Computer Corp. v. Loudcloud, Inc*., 133 F. Supp. 2d 823 (E.D. Va. January 10,

17  2001), the court acknowledged that a trademark misuse claim could serve as an affirmative defense

18  if the issue were ripe for adjudication. ("Because no trademark infringement claim has yet been

19  asserted against plaintiff, there is no occasion here for an assertion of the misuse defense."). Since

20  Instagram has opposed registration of Plaintiff's mark INSTAPRINTS on likelihood of confusion

21  grounds—and Plaintiff can reasonably anticipate Instagram will therefore bring counterclaims for

22  infringement—these defenses are ripe and properly pleaded. *See id.* at 830. Given Plaintiff's more

23

24  ─────────────────────

25  [4] If Plaintiff were asserting trademark misuse as an affirmative cause of action, it would be permissible, since the facts alleged in the FAC are precisely the facts to support a trademark misuse claim. This court has acknowledged that trademark misuse can serve as an affirmative claim. *See Nu Sci. Corp. v. eFasteam.com*, 2004 U.S. Dist. LEXIS 17763,

26  *11 (N.D. Cal. Aug. 24, 2004) ("If EFT is trying to make out a claim for trademark misuse…, it must provide far greater detail regarding Third-Party Defendants' wrongful conduct and how this amounts to a violation of the law.)

27  Instagram is attempting to destroy its competitors through use of the unprotectable component parts of its mark. Trademark misuse can serve as an affirmative cause of action, in this context. *See* William E. Ridgway, *Revitalizing the*

28  *Doctrine of Trademark Misuse*, 21 Berkeley Tech. L.J. 1547 (2006)).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED

1   than a reasonable apprehension of an imminent suit by Instagram, this court may consider the merits

2   of the affirmative defenses raised by Plaintiff as claims under the Declaratory Judgment Act. *See*

3   *Public Serv. Comm'n v. Wycoff Co*., 344 U.S. 237, 248 (1952) (federal courts "regularly consider

4   the merits of affirmative defenses raised by declaratory plaintiffs…").

5       Analogy to other areas of intellectual property law underscores this point. Much like the

6   issue of invalidity can be raised as both an affirmative defense and a counterclaim seeking

7   declaratory judgment, so too can the issues of trademark misuse and grounds for equitable relief.

8   *E.g.*, *Mentor Graphics Corp. v. Quickturn Design Sys*., 2003 U.S. Dist. LEXIS 16194 (N.D. Cal.

9   July 24, 2003). Likewise, this court has found that copyright misuse can be raised as both an

10  affirmative defense and counterclaim. *See Apple Inc. v. Psystar Corp.*, 2009 WL 303046, *3 (N.D.

11  Cal. 2009) ("This court is unconvinced…that misuse may never be asserted as a counterclaim for

12  declaratory relief."). This is consistent with the Ninth Circuit's position that the doctrine of

13  copyright misuse is a defense, but may also be permitted in actions for declaratory relief. *See*

14  *Practice Mgmt. Info. v. Am. Med. Ass'n*, 121 F.3d 516, 518 (9th Cir.1997). Additionally, patent

15  misuse can be raised as both an affirmative defense and counterclaim. *See, e.g., Allan Block Corp.*

16  *v. Cnty. Materials Corp*., 512 F.3d 912 (7th Cir. 2008).  If patent misuse and copyright misuse can

17  be asserted as counterclaims for declaratory relief, there is no sound basis for holding that

18  trademark misuse claims should be treated differently.

19      Likewise, the other grounds for equitable relief asserted by Pixels should be permitted as

20  claims for declaratory relief. Equitable defenses in intellectual property cases may be pleaded as

21  both affirmative defenses and counterclaims. *Seaboard Int'l v. Cameron Int'l*, 2013 U.S. Dist.

22  LEXIS 106784 (E.D. Cal. July 30, 2013); *Activision Publ'g, Inc. v. Gibson Guitar Corp.*, 2009 U.S.

23  Dist. Lexis 21931 (C.D. Cal. Feb. 26, 2009); *see Deniece Design, LLC v. Braun*, 953 F. Supp. 2d

24  765, 775 (S.D. Tex. June 19, 2013) ("Laches, estoppel and/or waiver can serve as an affirmative

25  defense to patent infringement, while a claim for declaratory judgment that Braun is barred from

26  enforcing the '299 patent against Deniece on those grounds can constitute a counterclaim to patent

27  infringement."). In circumstances where equitable grounds are pleaded as both affirmative defenses

28  and claims for declaratory relief, the claims are not automatically duplicative. For example, the

14

1  claimant may prevail on the merits of one of its numerous other affirmative defenses, with the Court

2  never reaching the issue of that affirmative defense. *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,

3  2015 U.S. Dist. LEXIS 98939, *11 (C.D. Cal. July 8, 2015) (citing 6 Wright, *Fed. Prac. & Proc.* §

4  1406 (3d ed. 2011) (rejecting the argument that "a counterclaim for a declaratory judgment

5  involving the same transaction as plaintiff's claim is wholly redundant and does not serve any

6  useful purpose" because "it ignores the [fact] that it is very difficult to determine whether the

7  declaratory-judgment counterclaim really is redundant prior to trial"). If these equitable grounds are

8  only raised as affirmative defenses and not also as declaratory relief claims, this Court may find that

9  Instagram's conduct constitutes trademark misuse, but never reach the issues of laches,

10  acquiescence, or estoppel. So that Pixels's affirmative defenses may be adjudicated, "the best

11  course is not to dismiss this counterclaim" of equitable relief. *See Toyo*, 2015 U.S. Dist. LEXIS

12  98939 at *11; *see also Kalo Inoculant v. Funk Bros. Seed*, 161 F.2d 981, 991 (7th Cir. 1947)

13  ("[W]hen Plaintiff brought suit for infringement of certain claims and defendant counterclaimed

14  seeking declaratory judgment upon all claims, the court, by judgment upon only the claims in suit,

15  did not dispose of all issues in controversy between the parties.  Defendant has a right to know

16  whether what it is doing violates any valid claim of Plaintiff's patent..."), *rev'd on other grounds*,

17  333 U.S. 127 (1948). Pixels has a right to know whether Instagram's act of reversal of position in

18  encouraging third parties to adopt marks containing the component parts "insta" and "gram" to now

19  aggressively enforcing these unprotectable descriptive component parts constitutes trademark

20  misuse, laches, acquiescence, and/or estoppel. Therefore, Pixels's claim for declaratory judgment

21  on equitable grounds is proper and must be adjudicated.

22  **V.        CONCLUSION**

23          For the foregoing reasons, Pixels respectfully requests that Instagram's motion to dismiss be

24  denied.

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

Dated: November 30, 2015

By:    /s/  Vijay K. Toke

Vijay K. Toke
Matthew S. Slevin
COBALT LLP

Joel T. Beres
Bruce B. Paul (to be admitted *pro hac vice*)
David B. Owsley, II (to be admitted *pro hac vice*)
Mari-Elise Gates
STITES & HARBISON PLLC

Attorneys for Plaintiff,
PIXELS.COM, LLC

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH
RELIEF MAY BE GRANTED